UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
THE WONDERFUL COMPANY LLC, a
Delaware limited liability company; and CAL
PURE PRODUCE INC., a California
Nonprofit Cooperative Association,

                        Plaintiffs,

        -against-

NUT CRAVINGS INC., a New York
Corporation; and DOES 1 through 10,

                        Defendants.
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/29/2022

1:21-cv-03960 (MKV)

**MEMORANDUM OPINION
AND ORDER GRANTING
MOTION TO DISMISS**

MARY KAY VYSKOCIL, United States District Judge:

Plaintiffs The Wonderful Company LLC ("TWC") and Cal Pure Produce Inc. ("CPP") assert claims under the Lanham Act for trade dress infringement and dilution, as well as state law claims for unfair competition and deceptive acts and practices. Defendant Nut Cravings Inc. moves to dismiss these claims pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the motion to dismiss is GRANTED.

**BACKGROUND**[1]

This case is about the packaging of pistachio nuts. TWC owns the WONDERFUL brand of pistachio and other nuts. Complaint ¶ 1 [ECF No. 6] ("Compl."). CPP markets and sells WONDERFUL brand pistachios and is a licensee of TWC. *Id.* ¶ 2.

TWC has invested hundreds of millions of dollars in the WONDERFUL brand, which has been extensively marketed in the United States. *Id.* ¶¶ 13, 16, 23. This marketing effort has included a number of highly publicized television commercials featuring well-known celebrities.

---

[1] The facts are taken from the Complaint, and for purposes of this motion, are accepted as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Id.* ¶ 17.  TWC has advertised its products online, on social media, in print media, and on billboards.  *Id.* ¶ 18.  As a result of these efforts, the WONDERFUL brand has become one of the bestselling nut products in the United States.  *Id.* ¶ 24.

The Complaint alleges that the WONDERFUL trade dress is "inherently distinctive" because of three elements: (1) predominantly black packaging; (2) use of a bright green accent color on the packaging; and (3) the predominantly rectangular shape of the package.  *Id.* ¶ 14.  Plaintiffs asserts that this trade dress has "acquired considerable value" and "become famous to the consuming public."  *Id.* ¶ 20.

On May 5, 2021, Plaintiffs filed this Complaint, arguing that Defendant sells nut products that infringe on the WONDERFUL trade dress by copying its three "inherently distinctive" elements.  *Id.* ¶¶ 25–36.  Side by side images of TWC's packaging and Defendant's packaging are included below.

 

*Id.* ¶¶ 15, 25; Exhibit A; Exhibit B.  The Complaint asserts six causes of action: (1) trade dress infringement and false designation of origin under 15 U.S.C. § 1125(a); (2) trade dress infringement under 15 U.S.C. § 1114(a); (3) trade dress dilution under 15 U.S.C. § 1125(c);

(4) unfair competition under New York common law; (5) unfair competition under New York General Business Law ("GBL") § 360-l; and (6) deceptive acts or practices under GBL § 349. *Id.* ¶¶ 37–77. Defendants move to dismiss the Complaint under Rule 12(b)(6). *See* Mot. Dismiss [ECF No. 20]; Memorandum of Law [ECF No. 21]. Plaintiffs opposed the motion, requesting leave to amend in the event of dismissal. *See* Response in Opposition [ECF No. 23] ("Pl. Mem."). Defendants submitted a Reply. *See* Reply Memorandum of Law [ECF No. 24].

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the Complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While the Court "must accept as true all of the allegations contained in a complaint," this "tenet . . . is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In considering this motion, the Court "must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999).

## ANALYSIS

### I.   Plaintiffs Do Not Plausibly Allege Unregistered Trade Dress Infringement

Section 43(a) of the Lanham Act provides a cause of action against any person who, "in connection with any goods . . . or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof . . . which . . . is likely to cause confusion, or to cause mistake, or to deceive . . . as to the origin, sponsorship, or approval of his or her goods . . . by another person." 15 U.S.C. § 1125(a)(1)(A); *see also Wal-Mart Stores, Inc. v. Samara*

*Bros., Inc.*, 529 U.S. 205, 209 (2000).  This protection extends to trade dress, "which encompasses the design and appearance of a product along with all the elements that serve to identify the product to consumers."  *Sherwood 48 Assocs. v. Sony Corp. of Am.*, 76 F. App'x 389, 391 (2d Cir. 2003).

To plead that Defendant violated Section 43(a), the Complaint must allege: (1) Plaintiffs' trade dress is "distinctive as to the source of its goods, and therefore entitled to protection," (2) Defendant's trade dress infringes on Plaintiffs' trade dress by creating "a likelihood of confusion," and (3) Plaintiffs' trade dress is "not functional."  *Kaufman & Fisher Wish Co., Ltd. v. F.A.O. Schwarz*, 184 F. Supp. 2d 311, 316 (S.D.N.Y. 2001) (cleaned up), *aff'd*, 51 F. App'x 335 (2d Cir. 2002).  The distinctiveness requirement can be met by plausibly alleging the trade dress is "inherently distinctive" or has acquired "secondary meaning."  *Id.* at 317; *see also Eliya, Inc. v. Kohl's Dep't Stores*, No. 06 CIV.195(GEL), 2006 WL 2645196, at *2 (S.D.N.Y. Sept. 13, 2006).

1. *Distinctiveness*

Plaintiffs fail to allege inherent or acquired distinctiveness.  First, as for inherent distinctiveness, the Complaint repeatedly asserts the mantra that the WONDERFUL trade dress is "inherently distinctive."  Compl. ¶¶ 14, 20, 27, 38, 56, 57.  But this conclusion is "not entitled to be assumed true."  *Iqbal*, 556 U.S. at 681.  Indeed, colors, such as black and green, are never inherently distinctive.  *See Samara*, 529 U.S. at 211–12 ("[W]ith respect to at least one category of mark—colors—we have held that no mark can ever be inherently distinctive.").  Nor are "common basic shape[s]," like rectangles.  *Shandong Shinho Food Indus. Co. v. May Flower Int'l, Inc.*, 521 F. Supp. 3d 222, 257 (E.D.N.Y. 2021) (quoting *Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 382 (2d Cir. 2005)).

Plaintiffs point to *Urban Group Exercise Consultants, Limited v. Dick's Sporting Goods, Inc.*, No. 12 CIV. 3599 RWS, 2012 WL 3240442 (S.D.N.Y. Aug. 7, 2012) ("*Urban Group I*"), to argue that "a unique color scheme *can* be distinctive."  Pl. Mem. 5 (emphasis in original).  *Urban*

4

*Group I* does not stand for that proposition. There, the complaint alleged that "the black and red color scheme *and the presence of Plaintiff's trademark on the fold skirt*" comprised the alleged trade dress. 2012 WL 3240442, at *5 (emphasis added). The color scheme, therefore, did not stand alone. Moreover, the *Urban Group I* court ultimately found that the alleged trade dress *was not distinctive* because the complaint failed to allege sufficient facts to establish the trade dress had acquired secondary meaning. *Id.* at *7. *Urban Group I* therefore undermines—not supports—Plaintiff's argument.

The Complaint does not plausibly allege acquired distinctiveness, either. Trade dress acquires "secondary meaning when the primary significance of the trade dress in the minds of the consuming public is not the product but the producer, such that the trade dress tends to be associated not just with the goods or services but with a single, though possibly anonymous, source." *Schutte Bagclosures Inc. v. Kwik Lok Corp.*, 48 F. Supp. 3d 675, 698 (S.D.N.Y. 2014) (cleaned up). Factors relevant to the secondary meaning analysis include: (1) advertising expenditures, (2) consumer studies, (3) unsolicited media coverage, (4) sales success, (5) attempts to plagiarize the dress, and (6) the length and exclusivity of the dress's use. *See Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 226 (2d Cir. 2012).

These factors "militate against a finding of secondary meaning." *Urb. Grp. Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*, No. 12 CIV. 3599, 2013 WL 866867, at *5 (S.D.N.Y. Mar. 8, 2013) ("*Urban Group II*"). With respect to advertising expenditures (factor one), plaintiffs *generally* allege that they have expended substantial amounts of money on advertising. *See, e.g.*, Compl. ¶ 13. Although the Complaint alleges at one point that the WONDERFUL trade dress is used "as the centrepiece [sic] for [TWC's] marketing," *id.* ¶ 23, this one vague allegation is insufficient to indicate "that any of [the] advertisements . . . stressed or emphasized the alleged trade dress." *Urban Group II*, 2013 WL 866867, at *3; *see also Bubble*

5

*Genius LLC v. Smith*, 239 F. Supp. 3d 586, 598 (E.D.N.Y. 2017) ("The Amended Complaint is also silent as to whether plaintiff's advertising stressed the elements of the trade dress.").

As for the other factors, the Complaint is entirely devoid of allegations relating to consumer studies (factor two) or unsolicited media coverage (factor three). Regarding sales success (factor four), the Complaint alleges that the WONDERFUL brand is "one of the bestselling nut products in the United States." Compl. ¶ 24. But it does not allege "how many of the units sold actually bear the alleged trade dress." *Urban Group II*, 2013 WL 866867, at *4. The Complaint also includes no allegations of plagiarizing (factor five) apart from Defendant's alleged copying. *See Bubble Genius*, 239 F. Supp. 3d at 600 (finding factor weighed against a finding of secondary meaning where the only alleged plagiarism was the conduct at issue). And finally, the Complaint includes a conclusory allegation that TWC has "continuously and exclusively used" the trade dress but fails to allege for how long the trade dress has been used (factor six). Compl. ¶ 21. Taking these factors together, the Court finds they "weigh against an inference that [Plaintiff's] trade dress has acquired a secondary meaning." *Bubble Genius*, 239 F. Supp. 3d at 600. *See also Eyal R.D. Corp. v. Jewelex N.Y. Ltd.*, 784 F.Supp.2d 441, 445, 448, 449 (S.D.N.Y. 2011) (complaint did not plead secondary meaning despite alleging "exclusive and widespread use," "enormous value and recognition," and that trade dress was "well known to the consuming public"); *Urban Group I*, 2012 WL 3240442, at *7 (complaint did not adequately allege secondary meaning where it "fail[ed] to allege facts relating to [the plaintiff's] advertising expenditures, consumer surveys, marketing coverage or prior attempts to plagiarize [the plaintiff's] trade dress"); *Carson Optical, Inc. v. Prym Consumer USA, Inc.*, 11 F.Supp.3d 317, 344 (E.D.N.Y. 2014) (complaint failed to

plead secondary meaning where it lacked facts "concerning actual consumer surveys, unsolicited media coverage or specific attempts to plagiarize the trade dress at issue").[2]

### 2. *Likelihood of Confusion*

Plaintiffs also fail to allege a likelihood of confusion. In trade dress cases, courts consider the following factors to evaluate confusion: (1) the strength of Plaintiff's dress; (2) the similarity between the two dresses; (3) the proximity of the products in the marketplace; (4) the likelihood that the prior owner will bridge the gap between the products; (5) evidence of actual confusion; (6) Defendant's bad faith; (7) the quality of Defendant's product; and (8) the sophistication of the relevant consumer group. *See Paddington Corp. v. Attiki Imps. & Distribs., Inc.*, 996 F.2d 577, 584 (2d Cir. 1993).

The allegations that speak to this requirement are entirely conclusory. For example, the Complaint alleges that Defendants are "causing customer confusion," Compl. ¶ 27, and that Defendant's products are "similar to Plaintiff's pistachio products," *id.* ¶ 29. The Court is further unconvinced, after a review of the images provided in the Complaint, "that consumers are likely to be confused by similarities between the two" packages. *Eliya, Inc. v. Steven Madden, Ltd.*, 749 F. App'x 43, 48 (2d Cir. 2018). Accordingly, the Court finds that the Complaint has not adequately alleged a likelihood of consumer confusion.

---

[2] The Court also notes that TWC has alleged in other actions that *different* elements of the TWC trade dress make it inherently distinctive. *See Carruthers v. Flaum*, 388 F. Supp. 2d 360, 370 (S.D.N.Y. 2005) ("[A] court may take judicial notice of admissions in pleadings and other documents in the public record filed by a party in other judicial proceedings that contradict the party's factual assertions in a subsequent action." (cleaned up)). For example, in an action filed in the Central District of California, TWC alleged that its trade dress was made distinctive in part because of the "semi-circle portion on each side of the packaging in the center area," "the use of all capital letters" spelling the word "PISTACHIOS," and "the use of *sans serif* font." Berkowitz Declaration Exhibit 3 at 4–5 [ECF No. 22-3]. In an action in the Eastern District of California, Plaintiffs similarly alleged TWC's trade dress was made distinctive because of the "curved shaped sections on the packaging," and "the use of all capital letters for the word 'PISTACHIOS.'" Berkowitz Declaration Exhibit 4 at 4 [ECF No. 22-4]. None of these elements are present on Defendant's packaging, perhaps explaining why Plaintiffs neglect to mention them here.

3.  *Functionality*

Plaintiffs also fail to allege that their trade dress is "not functional." *Kaufman*, 184 F. Supp. 2d at 316 (cleaned up). There is a "well-established rule that trade dress protection may not be claimed for product features that are functional." *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29 (2001). A product feature is functional if it is: (1) "essential to the use or purpose of the article," or if it (2) "affects the cost or quality of the article." *Sulzer Mixpac AG v. A&N Trading Co.*, 988 F.3d 174, 182 (2d Cir. 2021) (citation omitted).

The Complaint includes one sentence regarding functionality, stating that the WONDERFUL trade dress "contains inherently distinctive, nonfunctional features." Compl. ¶ 38. "This conclusory statement is insufficient to allege nonfunctionality." *Shandong*, 521 F. Supp. 3d at 261; *see also Eliya, Inc. v. Kohl's Corp.*, No. CV 15-2123(JFB)(GRB), 2016 WL 929266, at *7 (E.D.N.Y. Feb. 22, 2016), report and recommendation adopted, No. 15CV2123JFBGRB, 2016 WL 929321 (E.D.N.Y. Mar. 9, 2016) (finding "conclusory assertions" insufficient "to satisfy *Iqbal* and *Twombly*" where complaint included "only the most skeletal assertion that the claimed features are non-functional").

Because the Complaint fails to plausibly allege distinctiveness, likelihood of confusion, and non-functionality, Count I is dismissed.

**II.     Plaintiffs Do Not Plausibly Allege Registered Trade Dress Infringement**

Plaintiffs also assert a claim under Section 32 of the Lanham Act. *See* § 1114. However, Section 32 "protects only *registered*" trade dress. *Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.*, 726 F.3d 62, 72 (2d Cir. 2013) (emphasis added); *see also Samara*, 529 U.S. at 209 ("Registration of a mark under § 2 of the Lanham Act . . . enables the owner to sue an infringer under § 32, 15 U.S.C. § 1114."). The Complaint must therefore "allege[] facts plausibly showing that [Plaintiffs] fall[] within the statute's definition of 'registrant.'" *SPI Spirits*, 726 F.3d at 72.

The Complaint does not allege that Plaintiffs possess any registered trade dress. Accordingly, Count II must be dismissed. *See Franklin v. X Gear 101, LLC*, No. 17CIV6452GBDGWG, 2018 WL 3528731, at *9 (S.D.N.Y. July 23, 2018), report and recommendation adopted, No. 17CIV6452GBDGWG, 2018 WL 4103492 (S.D.N.Y. Aug. 28, 2018) (dismissing claim where complaint "fail[ed] to allege that the trademark was federally registered").

### III.     Plaintiffs Do Not Plausibly Allege Trade Dress Dilution

Plaintiffs next assert a claim for trade dress dilution in violation of Section 43(c). *See* § 1125(c). That Section entitles "the owner of a famous mark that is distinctive" to "an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution." § 1125(c)(1).

Famous marks are those that are "*widely recognized* by the *general consuming public* of the United States as a designation of source of the goods or services of the mark's owner." § 1125(c)(2)(A) (emphasis added). Courts generally restrict dilution claims "to marks that are truly famous or so well-known that they are essentially household names, such as Coca–Cola, Nike, or Budweiser." *DigitAlb, Sh.a v. Setplex*, LLC, 284 F. Supp. 3d 547, 557 (S.D.N.Y. 2018) (cleaned up).

The Complaint fails to state a plausible dilution claim. First, Plaintiffs do not plausibly allege their trade dress is "famous." § 1125(c)(1). Although the Complaint repeatedly asserts that the WONDERFUL trade dress has become "famous," Compl. ¶¶ 20, 27, 28, 56, 57, these "allegations are conclusory and not entitled to be assumed true," *Iqbal*, 556 U.S. at 681. Many of the remaining allegations, including that Plaintiffs spent "hundreds of millions of dollars . . . on the marketing [and] advertising . . . of its WONDERFUL brand," Compl. ¶ 23, do not plausibly allege that the trade dress *itself*—as opposed to the WONDERFUL products or brand—"has

9

achieved the degree of recognition in the general population to qualify it as a famous mark," *MZ Wallace Inc. v. Fuller*, No. 18CV2265(DLC), 2018 WL 4007645, at *3 (S.D.N.Y. Aug. 22, 2018). *See also Glob. Brand Holdings, LLC v. Church & Dwight Co.*, No. 17-CV-6571 (KBF), 2017 WL 6515419, at *5 (S.D.N.Y. Dec. 19, 2017) ("[A]llegations that plaintiff here invested money [and] . . . used its marks widely in internet advertisements [is not] sufficient to state a plausible claim that a mark is famous."). The allegation that the WONDERFUL brand is "one of the bestselling nut products in the United States" is similarly insufficient. Compl. ¶ 24. *See Urban Group II*, 2013 WL 866867, at *6 ("Allegations of extensive overall sales . . . for a product line are insufficient to unilaterally support an assertion that the trade dress of those products has achieved the widespread renown necessary to establish fame.").

The dilution claim must also fail because, as described above, Plaintiffs have not plausibly alleged that they are "the owner of a famous mark that is *distinctive*." § 1125(c)(1). For these reasons, Claim III is dismissed.

### IV.   Plaintiffs Do Not Plausibly Allege the New York State Law Claims

Plaintiffs also allege three state law causes of action. All three are insufficient even at this preliminary stage.

#### 1.   *Common Law Unfair Competition*

Court IV alleges unfair competition under New York common law. "The standard for trademark infringement and unfair competition under the Lanham Act is virtually identical to that under New York common law, except that the latter requires an additional showing of bad faith." *Lopez v. Adidas Am.*, Inc., No. 19-CV-7631 (LJL), 2020 WL 2539116, at *15 (S.D.N.Y. May 19, 2020) (cleaned up). As described above, Plaintiffs do not plausibly allege a claim under the Lanham Act. Therefore, this common law claim necessarily fails. *See Cardinal Motors, Inc. v.*

*H&H Sports Prot. USA, Inc.*, No. 1:20-CV-07899-PAC, 2021 WL 1758881, at *5 (S.D.N.Y. May 4, 2021).

Further, the Complaint's mere assertion that Defendant acted "willfully," Compl. ¶¶ 27, 76, is insufficient to allege bad faith, *see Bubble Genius*, 239 F. Supp. 3d at 602 (concluding complaint did "not contain any facts that would lead to the plausible inference . . . that defendant acted in bad faith" where it alleged "in a conclusory manner that defendant acted 'willfully, wantonly, oppressively and maliciously, and with the intent to cause confusion, mistake and to deceive prospective customers'"). Court IV is therefore dismissed.

    2.    *GBL Violations*

Counts V and VI allege violations of New York GBL § 360-l and § 349 respectively. These claims are preempted by federal law, and therefore must be dismissed. *See Eyal*, 784 F. Supp. 2d at 449 ("Though generally speaking, a plaintiff may plead facts to make out an independent claim under section 360–l, where a plaintiff can only plead facts to allege harm from copying, a claim under section 360–l should be considered preempted." (citation omitted)); *id.* (dismissing § 349 claim where plaintiff "alleged harms arising only from [the defendant's] alleged copying of its design, and thus asserts only a harm squarely covered by federal copyright law"); *Bubble Genius*, 239 F. Supp. 3d at 603–04 ("[B]ecause plaintiff's statutory state law unfair competition claim is based solely on defendant's alleged copying of its design, it is preempted by federal law.").

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is GRANTED without prejudice. Plaintiffs are GRANTED 14 days to amend their Complaint.

The Clerk of the Court is respectfully requested to terminate docket entry 20.

**SO ORDERED.**

Date: **September 29, 2022**
New York, NY

*Mary Kay Vyskocil*

**MARY KAY VYSKOCIL**
**United States District Judge**