UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #:_____                │
│ DATE FILED: 9/26/2023                │
└─────────────────────────────────────┘
```

THE WONDERFUL COMPANY LLC, a
Delaware limited liability company; and CAL
PURE PRODUCE INC., a California
Nonprofit Cooperative Association,

                          Plaintiffs,

            -against-

NUT CRAVINGS INC., a New York
Corporation; and DOES 1 through 10,

                          Defendants.

1:21-cv-03960 (MKV)

**OPINION AND ORDER
GRANTING MOTION TO DISMISS
SECOND AMENDED COMPLAINT
WITH PREJUDICE**

MARY KAY VYSKOCIL, United States District Judge:

Plaintiffs The Wonderful Company LLC ("TWC") and Cal Pure Produce Inc. ("CPP") (together, "Plaintiffs") filed a Second Amended Complaint ("SAC") asserting claims under the Lanham Act for trade dress infringement against Defendant Nut Cravings Inc. ("Defendant"). Defendant moves to dismiss the SAC pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the reasons set forth below, the Motion to Dismiss is GRANTED with prejudice.

## BACKGROUND[1]

This case involves Plaintiffs' asserted trademark rights in the packaging of pistachio nuts. TWC owns the WONDERFUL brand of pistachio nuts. SAC ¶¶ 1–2. CPP markets and sells WONDERFUL brand pistachios as TWC's licensee. SAC ¶ 2. The WONDERFUL brand is the world's largest vertically integrated pistachio grower. SAC ¶ 10. WONDERFUL brand pistachios

---

[1] This Opinion draws its facts from the SAC [ECF No. 33], documents attached to the SAC as exhibits, and documents incorporated by reference therein. *See Hayden v. Cnty. of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999). The well-pleaded facts of the SAC are taken as true and construed in favor of Plaintiffs for purposes of this Motion. *See Lynch v. City of New York*, 952 F.3d 67, 74–75 (2d Cir. 2020).

are premium quality and sold nationwide in brick-and-mortar stores such as Target, Whole Foods, Walmart, and Costco, and through online retailers such as Amazon.  SAC ¶¶ 11–12, 31, 46. WONDERFUL brand pistachios are the best-selling snack nut in the United States by revenue. SAC ¶ 27.

WONDERFUL brand pistachio nuts are sold in a package bearing the following features: (1) "a predominantly black package"; (2) "a bright green accent color"; (3) "use of sans serif font for the word 'PISTACHIOS'"; (4) "use of capital letters for the word 'PISTACHIOS'"; (5) "semi-circular curved 'window' cut outs showing pistachios"; and (6) "the WONDERFUL mark."  SAC ¶ 12.  Since 2014, TWC has held a registered trademark in the WONDERFUL packaging.  SAC ¶¶ 14–15.  The registered trademark consists of:

> black three-dimensional product packaging having a rectangular shape with transparent semi-circular curved sides, the word 'wonderful' in white with a design of a 'heart' in place of the letter 'o' appearing across the top of the packaging and the word 'pistachios' in green appearing vertically in the middle of the packaging.

[ECF No. 33-2 ("Ex. B")].  "The color(s) white, black and green is/are claimed as a feature of the mark."  Ex. B.  Plaintiffs assert that the elements of the WONDERFUL packaging are nonfunctional because they are not essential to the use or purpose of the product or packaging, and because they do not affect the cost or quality of the product or packaging.  SAC ¶ 43.

TWC has extensively marketed WONDERFUL brand pistachio nuts.  Its advertising campaigns include a highly-publicized series of commercials featuring well-known celebrities, aired on major television networks.  SAC ¶¶ 18–19.  The commercials feature the WONDERFUL packaging and focus on the black and green theme of the WONDERFUL brand.  SAC ¶¶ 20–23. WONDERFUL pistachios are also advertised through in-store display bins featuring a black and green color scheme and all-capital sans serif font.  SAC ¶ 24.  Additionally, WONDERFUL pistachios are marketed on social and print media, on billboards, and through other advertising

avenues.  SAC ¶ 25.  Plaintiffs have spent over half a billion dollars advertising the WONDERFUL brand since its creation in 2009.  SAC ¶¶ 12, 26.  Plaintiffs assert that the purpose of their advertising is to create consumer familiarity and a source identification link between the WONDERFUL brand of pistachio nuts and its "distinctive" packaging.  SAC ¶¶ 17, 20–21, 23–24, 31.  Plaintiffs allege that as a result of their advertising efforts, the WONDERFUL packaging has achieved public acceptance and reputation and consumer goodwill.  SAC ¶ 32.  Plaintiffs have conducted consumer studies showing that 85% of snack nut purchasers recognize the WONDERFUL packaging.  SAC ¶ 44.

Defendant also owns a brand of packaged nuts.  SAC ¶ 13.  Defendant sells its products only through online retailers, such as Amazon, and not in brick-and-mortar stores.  SAC ¶¶ 41, 46. Plaintiffs allege that Defendant created a package for its pistachio nuts that is confusingly similar to the WONDERFUL brand pistachio packaging.  SAC ¶ 13.  Side-by-side images of the WONDERFUL packaging and Defendant's packaging are reproduced below:



| Plaintiffs' Packaging | Defendant's Packaging |
| --- | --- |

SAC ¶ 13.  Plaintiffs allege that Defendant's packaging, like theirs, is "predominantly black with a bright green accent color and a window depicting pistachios," and that Defendant has also added "pistachios" in an all-capital, similar sans serif font.  SAC ¶¶ 34, 45.  Plaintiffs allege that because of these similarities, Defendant's packaging "call[s] to consumers' minds the WONDERFUL" brand, creating a likelihood of confusion that Defendant's products are Plaintiffs', or are somehow affiliated with Plaintiffs.  SAC ¶¶ 39–40.  Plaintiffs allege that Defendant's copying of Plaintiffs' packaging was intentional.  SAC ¶ 47.

## PROCEDURAL HISTORY

Plaintiffs initiated this action against Defendant, filing a Complaint alleging claims under the Lanham Act for trade dress infringement and dilution and state law claims for unfair competition and deceptive acts and practices.  [ECF No. 6].  Defendant moved to dismiss the original Complaint pursuant to Rule 12(b)(6).  [ECF No. 20].  The Court granted the motion to dismiss without prejudice, permitting Plaintiffs to amend their Complaint.  [ECF No. 27].  Plaintiffs then filed a First Amended Complaint ("FAC").  [ECF No. 28].  Defendant filed a pre-motion letter requesting leave to move to dismiss the FAC.  [ECF No. 29].  Plaintiffs opposed [ECF No. 30], and, with leave of Court [ECF Nos. 31–32], filed the SAC [ECF No. 33].  The SAC asserts two claims: a claim for trade dress infringement and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and a claim for registered trade dress infringement under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).  SAC ¶¶ 48–63.

Defendant now moves to dismiss the SAC under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  [ECF Nos. 34, 35 ("Def. Mem.")].  Plaintiffs opposed.  [ECF

No. 36 ("Pl. Mem.")].  Defendant submitted a Reply in further support of its Motion.  [ECF No. 37 ("Def. Reply")].

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), the SAC must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible if the SAC contains sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  Although the Court "must accept as true all of the allegations contained in a complaint," this "tenet . . . is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  In considering this Motion, the Court "must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits[,] and documents incorporated by reference in the complaint." *Hayden*, 180 F.3d at 54.

## DISCUSSION

### I.   Plaintiffs Do Not Plausibly Allege Unregistered Trade Dress Infringement

Section 43(a) of the Lanham Act provides a cause of action against any person who "in connection with any goods . . . , or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin . . . which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a)(1)(A); *see Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 209 (2000).  This provision protects trade dress, which "includes the design and appearance of the product as well as that of the

container and all elements making up the total visual image by which the product is presented to customers." *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 31 (2d Cir. 1995); *see also Sherwood 48 Assocs. v. Sony Corp. of America*, 76 F. App'x 389, 391 (2d Cir. 2003) (trade dress "encompasses the design and appearance of a product along with all the elements that serve to identify the product to consumers").

To plead a claim of trade dress infringement, the SAC must allege: (1) that Plaintiffs' claimed trade dress is "distinctive," either because it is "inherently distinctive" or has acquired "secondary meaning" among consumers; (2) that there is a likelihood of confusion between Plaintiffs' claimed trade dress and Defendant's; and (3) that Plaintiffs' claimed trade dress is "non-functional." *Sherwood*, 76 F. App'x at 391; *Kaufman & Fisher Wish Co., Ltd. v. F.A.O. Schwarz*, 184 F. Supp. 2d 311, 316–17 (S.D.N.Y. 2001), *aff'd*, 51 F. App'x 335 (2d Cir. 2002). In addition, at the threshold, Plaintiffs "must precisely articulate the specific elements that comprise [their] distinct trade dress" to ensure that their "claims of trade dress infringement are pitched at an appropriate level of generality," because "trade dress law [does not] protect . . . a generalized type of appearance." *Kaufman & Fisher*, 184 F. Supp. at 317 (internal quotation marks omitted) (first citing *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997); then quoting *Jeffrey Milstein*, 58 F.3d at 32); *see also Sherwood*, 76 F. App'x at 391; *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 117 (2d Cir. 2001) ("the party seeking protection must . . . be able to point to the elements and features that distinguish its trade dress").

A. <u>Description of Trade Dress</u>

Plaintiffs claim six trade dress elements in the WONDERFUL packaging: (1) "a predominantly black package"; (2) "a bright green accent color"; (3) "use of sans serif font for the word 'PISTACHIOS'"; (4) "use of capital letters for the word 'PISTACHIOS'"; (5) "semi-circular curved 'window' cut outs showing pistachios"; and (6) "the WONDERFUL mark." SAC ¶ 12.

6

Defendant argues that the SAC fails because Plaintiffs do not articulate their trade dress with the required precision.  Def. Mem. 8–10; *see Kaufman & Fisher*, 184 F. Supp. at 317.  Defendant argues that although the SAC identifies six claimed trade dress elements, the included photograph of the WONDERFUL packaging and Plaintiffs' registered trademark conflict with this description because they "include many more elements than the six listed," such as a vertical orientation of the word "PISTACHIOS" and a heart in place of the "O" in the WONDERFUL brand name.  Def Mem. 9; Def. Reply 3.

To adequately articulate their trade dress in the SAC, Plaintiffs must state "a stable, unvarying list of distinct design features."  *APP Grp. (Canada) Inc. v. Rudsak USA Inc.*, No. 21-CV-7712 (VEC), 2022 WL 3227861, at *2 (S.D.N.Y. Aug. 10, 2022); *see also Yurman Design*, 262 F.3d at 117.  Plaintiffs have done so, identifying six defined elements that they allege, in combination, comprise their trade dress in the WONDERFUL packaging.  *See* SAC ¶ 12.  This list of features stands in contrast to the allegations made in cases that courts have dismissed at the pleadings stage for failure to allege the precise elements of the claimed trade dress.  *See, e.g.*, *Int'l Leisure Prods., Inc. v. FUNBOY LLC*, 747 F. App'x 23, 25 (2d Cir. 2018) (affirming dismissal where several of plaintiff's claimed trade dress elements contained vague descriptions "like a 'pleasing appearance' or an 'aesthetic proportion'"); *APP Grp.*, 2022 WL 3227861, at *2 (plaintiff's articulation of trade dress was impermissibly "indefinite" and "high-level" where it was not clear whether plaintiff claimed a "V-shaped fur collar/hood, or the asymmetrical zipper, *or* the two in combination" (emphasis added)); *Sara Designs, Inc. v. A Classic Time Watch Co. Inc.*, 234 F. Supp. 3d 548, 555 (S.D.N.Y. 2017) (dismissing trade dress claim where complaint "merely contain[ed] a high level description of features of several watches"); *Tracey Tooker & TT Ltd., Inc. v. Whitworth*, 212 F. Supp. 3d 429, 434 (S.D.N.Y. 2016) (dismissing trade dress claim where plaintiff claimed "unique elements of style, shape, angle, height, width, and/or slant," of

hats, "but provide[d] no further detail" (internal quotation marks omitted)); *Heller Inc. v. Design Within Reach, Inc.*, No. 09CIV1909(JGK), 2009 WL 2486054, at *6 (S.D.N.Y. Aug. 14, 2009) (plaintiff failed to articulate trade dress where it "offer[ed] a vague description of its claimed trade dress as an 'ornamental and sculptural chair'"). Here, Plaintiffs' claimed trade dress is "quite detailed," describing the colors and font used on the WONDERFUL packaging, among other features. *Shandong Shinho Food Indus. Co. v. May Flower Int'l, Inc.*, 521 F. Supp. 3d 222, 256 (E.D.N.Y. 2021); *see also Focus Prod. Grp. Int'l, LLC v. Kartri Sales Co., Inc.*, 454 F. Supp. 3d 229, 249 (S.D.N.Y. 2020) (finding that plaintiff's "recit[ation] in specific detail [of] the geometric and aesthetic characteristics of its trade dress" was "sufficiently precise" (internal quotation marks omitted)).

Moreover, courts have found that even when a complaint contains some overbroad or unclear descriptions of a trade dress, the articulation requirement may be satisfied if "there are other elements of [the] claimed trade dress that are sufficiently specific." *Caraway Home, Inc. v. Pattern Brands, Inc.*, No. 20 CIV. 10469, 2021 WL 1226156, at *7 (S.D.N.Y. Apr. 1, 2021). Defendant offers no authority for its position that a plaintiff's articulated trade dress must fail because the product or package bears additional elements that are *not* claimed as part of the trade dress. *See* Def. Reply 3. Construing the facts alleged in the SAC in the light most favorable to Plaintiffs for purposes of this Motion, the Court finds that Plaintiffs have adequately articulated, with sufficient specificity, the features and scope of their claimed trade dress in the WONDERFUL packaging.

### B. Distinctiveness

To allege distinctiveness, the SAC must plead "*either* that the 'intrinsic nature' of the mark serves to identify a particular source (what is known as 'inherent distinctiveness') *or* that 'in the minds of the public, the primary significance of [the mark] is to identify the source of the product

rather than the product itself' (what is known as 'acquired distinctiveness' or 'secondary meaning')." *Yurman Design*, 262 F.3d at 115 (quoting *Samara Bros.*, 529 U.S. at 210–11). Plaintiffs concede that the SAC does not allege that their claimed trade dress is inherently distinctive. *See* Pl. Mem. 6–8 (arguing only that the trade dress has secondary meaning). Thus, the Court considers only whether Plaintiffs have alleged acquired distinctiveness, or secondary meaning.

Plaintiffs adequately allege secondary meaning. A trade dress acquires "secondary meaning when the primary significance of the trade dress in the minds of the consuming public is not the product but the producer, such that the trade dress tends to be associated not just with the goods or services but with a single . . . source." *Schutte Bagclosures Inc. v. Kwik Lok Corp.*, 48 F. Supp. 3d 675, 698 (S.D.N.Y. 2014) (cleaned up). In the Second Circuit, "[f]actors that are relevant in determining secondary meaning include (1) advertising expenditures, (2) consumer studies linking the mark to a source, (3) unsolicited media coverage of the product, (4) sales success, (5) attempts to plagiarize the mark, and, (6) length and exclusivity of the mark's use." *Christian Louboutin S.A. v. Yves Saint Laurent America Holdings, Inc.*, 696 F.3d 206, 226 (2d Cir. 2012) (internal quotation marks omitted). "None of these elements is determinative and not every one of them must be proved to make a showing of secondary meaning." *GeigTech E. Bay LLC v. Lutron Elecs. Co.*, 352 F. Supp. 3d 265, 282 (S.D.N.Y. 2018) (internal quotation marks omitted). Consideration of the SAC's allegations under these factors favors a finding that Plaintiffs have alleged secondary meaning.

As to advertising expenditures, Plaintiffs allege that they have expended significant sums advertising the WONDERFUL brand through various means, and that most of these advertisements highlight the WONDERFUL packaging. The SAC alleges both "the amount of funds spent on advertising" and "the specifics of how" WONDERFUL brand pistachios are

advertised.  *Bubble Genius LLC v. Smith*, 239 F. Supp. 3d 586, 598 (E.D.N.Y. 2017); *see* SAC ¶¶ 18–26.  Plaintiffs also allege that their "advertising stressed the elements of the trade dress," such as by featuring a black and green theme and displaying the WONDERFUL packaging. *Bubble Genius*, 239 F. Supp. 3d at 598; *see* SAC ¶¶ 21, 23.  The SAC's allegations regarding advertising support a finding that Plaintiffs have plausibly alleged secondary meaning.

The SAC also alleges that consumer studies established that 85% of consumers recognize the WONDERFUL packaging, and that the WONDERFUL brand and its packaging have been the subject of unsolicited articles.  SAC ¶¶ 28, 44.  The SAC additionally includes allegations that WONDERFUL brand pistachios sold in the WONDERFUL packaging are the best-selling snack nut in the United States, and that Plaintiffs have sold over one billion packages of pistachios in the WONDERFUL packaging in the last thirteen years, for over $4.2 billion in revenue.  SAC ¶ 27. These allegations also support that Plaintiffs have plausibly alleged secondary meaning.  *See GeigTech*, 352 F. Supp. 3d at 283–84; *Shandong*, 521 F. Supp. 3d at 258–59.

Plaintiffs additionally allege that they have combatted attempts to plagiarize the WONDERFUL packaging in other lawsuits, which they list by case name.  SAC ¶ 29.  Although Defendant argues that at least one of these lawsuits involved a different trade dress than that Plaintiffs allege here, *see* Def. Mem. 14, that is not an issue to be decided on this Motion.  *See GeigTech*, 352 F. Supp. 3d at 284 ("[The] determination of many factors going to secondary meaning will require discovery.").  Finally, Plaintiffs allege that they have continuously and exclusively used the WONDERFUL packaging in connection with WONDERFUL brand pistachio nuts for thirteen years.  SAC ¶ 31.  These factors further support that Plaintiffs have adequately alleged secondary meaning.

The Court finds that Plaintiffs' allegations in the SAC, taken together, adequately plead secondary meaning for purposes of this Rule 12(b)(6) Motion.  *See GeigTech*, 352 F. Supp. 3d at 284.

      C.  Likelihood of Confusion

That Plaintiffs have precisely articulated their claimed trade dress and adequately alleged secondary meaning does not end the inquiry.  The SAC must plead that Defendant's alleged use of Plaintiffs' trade dress creates a likelihood of confusion between Plaintiffs' product and Defendant's product.  The Second Circuit has enumerated factors a court should consider in evaluating the likelihood of confusion in trade dress cases.  The Court considers: "(1) the strength of the plaintiff's mark or dress; (2) the similarity between the two marks or dresses; (3) the proximity of the products in the marketplace; (4) the likelihood that the prior owner will bridge the gap between the products; (5) evidence of actual confusion; (6) the defendant's bad faith; (7) the quality of the defendant's product; and (8) the sophistication of the relevant consumer group." *Paddington Corp. v. Attiki Imps. & Distribs., Inc.*, 996 F.2d 577, 584 (2d Cir. 1993) (citing *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961)) (the "*Polaroid* factors").  "A court's evaluation of the *Polaroid* factors should not be mechanical, nor is any single factor determinative.  Rather, a court 'should focus on the ultimate question of whether consumers are likely to be confused.'" *Clinique Lab'ys, Inc. v. Dep Corp.*, 945 F. Supp. 547, 551 (S.D.N.Y. 1996) (citation omitted) (quoting *Paddington*, 996 F.2d at 584).  Applying the *Polaroid* factors, the Court concludes that Plaintiffs do not adequately allege a likelihood of confusion.

The first *Polaroid* factor favors Plaintiffs.  In determining the strength of a trademark, the Court looks to many of the same factors it considers in conducting the secondary meaning inquiry. *See Advance Mag. Publishers, Inc. v. Norris*, 627 F. Supp. 2d 103, 116 (S.D.N.Y. 2008); *Metrokane, Inc. v. The Wine Enthusiast*, 160 F. Supp. 2d 633, 641 (S.D.N.Y. 2001) (where a

plaintiff's trade dress is found to have acquired secondary meaning, its trade dress is strong under the *Polaroid* analysis). For the reasons explained above, *see supra* Section I.B, Plaintiffs allege that their trade dress is strong.

As to the second factor, the Court is not persuaded, after a review of the images provided in the SAC, "that consumers are likely to be confused by similarities between the two" pistachio packages. *Eliya, Inc. v. Steven Madden, Ltd.*, 749 F. App'x 43, 48 (2d Cir. 2018). The Court does not merely conduct a side-by-side comparison of the images of the parties' trade dresses, but "ask[s] whether they create the same general overall impression such that a consumer who has seen [Plaintiffs'] trade dress would, upon later seeing [Defendant's] trade dress alone, be confused." *Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 1004 (2d Cir. 1997); *see Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1046 (2d Cir. 1992) ("[I]n a trade dress infringement case the question is not how many points of similarity exist between the two packages but rather whether the two trade dresses create the same general overall impression." (internal quotation marks omitted)). However, a visual comparison of the trade dresses is relevant to this analysis. *See Eliya*, 749 F. App'x at 48; *GeigTech*, 352 F. Supp. 3d at 285 (on a motion to dismiss, reviewing "side-by-side photographic comparisons" of trade dresses illustrated in the complaint); *Metrokane*, 160 F. Supp. 2d at 641 (conducting a visual inspection of trade dresses and concluding that the products "are not substantially similar in appearance," disfavoring plaintiffs and resulting in no likelihood of confusion on a motion to dismiss (citing *Universal City Studios, Inc. v. Nintendo Co.*, 746 F.2d 112, 116 (2d Cir. 1984)).

Here, the Court does not find that the WONDERFUL packaging and Defendant's packaging possess such "striking similarity," *GeigTech*, 352 F. Supp. 3d at 285, that "they create the same general overall impression," *Knowles-Carter v. Feyonce, Inc.*, 347 F. Supp. 3d 217, 225 (S.D.N.Y. 2018) (internal quotation marks omitted). Although there are some points of likeness,

"the differences outweigh the similarities." *It's a New 10, LLC v. Harmon Stores, Inc.*, No. 17-CV-4231 (JPO), 2017 WL 3208611, at *3 (S.D.N.Y. July 28, 2017) (citing *Bristol-Myers Squibb*, 973 F.2d at 1046). For example, Defendant's packaging utilizes a large rectangular cutout window displaying pistachios, instead of the WONDERFUL packaging's two "semi-circular curved" windows that are alleged to be distinctive elements of Plaintiffs' trade dress. *See* SAC ¶¶ 12–13. In addition, Defendant's packaging displays the word "PISTACHIOS" horizontally (not vertically, an element of Plaintiffs' registered mark). *See* SAC ¶ 13; Ex. B. Defendant's packaging also prominently includes the descriptor "ROASTED SALTED" and additional product characteristics marked in white circles (as opposed to the WONDERFUL packaging's minimal appearance). *See* SAC ¶ 13. As a result of these differences, "the focal points of the two products . . . are wholly different." *It's a New 10*, 2017 WL 3208611, at *3. And Defendant's packaging does not feature the WONDERFUL mark, which is asserted to be part of Plaintiffs' trade dress. *See id.*; SAC ¶¶ 12–13. This factor thus favors Defendant.

As to the third factor, Plaintiffs argue that their and Defendant's products are proximate because they are both sold on Amazon. Pl. Mem. 9; SAC ¶ 46. But much of the SAC focuses on Plaintiffs' *brick-and-mortar* retailers. *See* SAC ¶¶ 12, 24, 31. According to the SAC, Defendant *does not* sell its products in brick-and-mortar retailers. SAC ¶ 41. This factor tilts slightly in Defendant's favor.

The fourth factor, the likelihood of bridging the gap, "examines whether the prior user may wish to enter the defendant's market in the future." *Paddington*, 996 F.2d at 586. This factor is not applicable where "the two products are largely operating in the same market." *Bulman v. 2BKCO, Inc.*, 882 F. Supp. 2d 551, 562 (S.D.N.Y. 2012); *accord GeigTech*, 352 F. Supp. 3d at 285. Here, the relevant market is the market for pistachio nuts, in which both products operate. *See* SAC ¶ 13. The Court therefore does not consider this factor. *See* Pl. Mem. 9–10.

As to the fifth factor, Plaintiffs concede that they have offered no allegations of actual confusion.  *See* Pl. Mem. 10.  It is true that "[f]or a finding of trademark infringement, it is not essential to demonstrate actual confusion."  *Bulman*, 882 F. Supp. 2d at 562.  However, Plaintiffs' failure to allege actual confusion at the pleadings stage results in this factor favoring Defendant.  *See GeigTech*, 352 F. Supp. 3d at 285; *It's a New 10*, 2017 WL 3208611, at *4.

As to the sixth factor, Plaintiffs assert that their allegations that Defendant's packaging was created after theirs, and that Defendant modified its packaging over time so that it more closely resembled Plaintiffs' WONDERFUL packaging, indicate bad faith.  Pl. Mem. 10; *see* SAC ¶¶ 34, 47.  These allegations do not support an inference of bad faith.  *See Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 397 (2d Cir. 1995) ("Prior knowledge of a senior user's trade mark does not necessarily give rise to an inference of bad faith."); *Fun-Damental Too*, 111 F.3d at 1005 ("[B]ad faith should not be inferred simply from the fact of copying.").  Plaintiffs do not offer any nonconclusory allegations that Defendant "adopted its mark with the intention of capitalizing on plaintiff's reputation and goodwill."  *Lang v. Ret. Living Pub. Co.*, 949 F.2d 576, 583 (2d Cir. 1991) (internal quotation marks omitted).  This factor thus favors Defendant.

As to the seventh factor, Plaintiffs concede that they offer no allegations regarding the quality of Defendant's product.  Pl. Mem. 10.  Plaintiffs allege only that *their own* product is "premium quality" and produced "using the highest quality standards."  SAC ¶ 11.  This factor therefore favors Defendant.

Finally, as to the eighth factor, Plaintiffs argue that they have alleged pistachio consumers' lack of sophistication by pleading that nuts and snacks are low cost, "fast moving" goods purchased on impulse.  Pl. Mem. 10; *see* SAC ¶ 30.  Inexpensive items purchased on impulse generally correlate with a lack of consumer sophistication, because consumers typically exercise less care in

purchasing such products. *See Fun-Damental Too*, 111 F.3d at 1004; *Fruit-Ices Corp. v. Coolbrands Int'l, Inc.*, 335 F. Supp. 2d 412, 428 (S.D.N.Y. 2004). This factor favors Plaintiffs.

In weighing the *Polaroid* factors in light of the facts alleged in the SAC, Plaintiffs have not adequately alleged a likelihood of confusion. Although some factors favor Plaintiffs, the Court focuses not on which party has the greatest number of factors weighing in its favor, but "on the ultimate question of whether consumers are likely to be confused." *Paddington*, 996 F.2d at 584. The Court finds, on balance, that the *Polaroid* inquiry favors Defendant. Most significantly, Plaintiffs have not alleged that the WONDERFUL packaging and Defendant's packaging are so substantially similar in appearance that they convey the same overall impression to consumers. *See Metrokane*, 160 F. Supp. 2d at 641 (finding no likelihood of confusion on a motion to dismiss primarily based on the "similarity" factor); *It's a New 10*, 2017 WL 3208611, at *5 (focusing on "the overall dissimilarity of the products"). Accordingly, the Court finds that the SAC does not adequately allege a likelihood of consumer confusion.

D.   Nonfunctionality

Plaintiffs also fail to allege that their trade dress is "non-functional." *See Sherwood*, 76 F. App'x at 391. As the Supreme Court has recognized, there is a "well-established rule that trade dress protection may not be claimed for product features that are functional." *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29 (2001). A product feature is functional if it: (1) "is essential to the use or purpose of the" product or (2) "affects the cost or quality of the" product. *Yurman Design*, 262 F.3d at 116 (internal quotation marks omitted) (quoting *TrafFix*, 532 U.S. at 32–33). A feature is considered aesthetically functional "if giving the markholder the right to use it exclusively 'would put competitors at a significant non-reputation-related disadvantage.'"

*Christian Louboutin*, 696 F.3d at 219–20 (quoting *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 165 (1995)).

The SAC's only allegations regarding nonfunctionality are threadbare recitations of the applicable legal standard.  *See* SAC ¶ 43 ("The elements of the WONDERFUL® Packaging . . . are non-functional because they are not essential to the use or purpose of the product or packaging, and do not affect the cost or quality of the pistachios or packaging."); *see also* SAC ¶ 49 ("The WONDERFUL® Packaging contains distinctive, nonfunctional features . . . .").  These conclusory allegations are insufficient to plead nonfunctionality under *Twombly* and *Iqbal*.  *See DO Denim, LLC v. Fried Denim, Inc.*, 634 F. Supp. 2d 403, 408 (S.D.N.Y. 2009); *Shandong*, 521 F. Supp. 3d at 261; *Eliya, Inc. v. Kohl's Corp.*, No. CV 15-2123(JFB)(GRB), 2016 WL 929266, at *7 (E.D.N.Y. Feb. 22, 2016), *report and recommendation adopted*, No. 15CV2123JFBGRB, 2016 WL 929321 (E.D.N.Y. Mar. 9, 2016); *Carson Optical, Inc. v. Prym Consumer USA, Inc.*, No. CV 11-3677 ARL, 2013 WL 1209041, at *13 (E.D.N.Y. Mar. 25, 2013).

Even if the Court were to consider surrounding allegations in the SAC as plausibly addressing nonfunctionality, it would find that Plaintiffs have not met their pleading burden.  In their brief, Plaintiffs primarily point to the fact that the SAC alleges that there are numerous design options available for the packaging of nuts.  Pl. Mem. 12; *see* SAC ¶¶ 33, 36–38, 43, 47.  But the fact of potential alternative designs does not establish that a claimed trade dress feature is nonfunctional.  *See Eliya*, 2016 WL 929266, at *7; *cf. also Mana Prods., Inc. v. Columbia Cosms. Mfg., Inc.*, 65 F.3d 1063, 1071 (2d Cir. 1995).[2]

The Court finds that Plaintiffs fail to allege the nonfunctionality of its claimed trade dress in the WONDERFUL packaging.  In sum, the Court concludes that because the SAC fails to

---

[2] Plaintiffs additionally argue that they are not required to plead nonfunctionality because they hold a registered trademark in the WONDERFUL packaging.  Pl. Mem. 11.  While that may be true for Plaintiffs' claim under Section

plausibly allege a likelihood of confusion and nonfunctionality, Plaintiffs fail to state a claim for unregistered trade dress infringement under Section 43(a) of the Lanham Act.

## II.     Plaintiffs Do Not Plausibly Allege Registered Trade Dress Infringement

Plaintiffs also assert a claim for trade dress infringement under Section 32(1) of the Lanham Act.  *See* 15 U.S.C. § 1114(1).  Section 32 protects only registered trademarks.  *Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.*, 726 F.3d 62, 72 (2d Cir. 2013); *see also Samara Bros.*, 529 U.S. at 209.  The legal elements of a registered trade dress claim are the same as those of an unregistered trade dress claim.  *See Time, Inc. v. Petersen Pub. Co. L.L.C.*, 173 F.3d 113, 118 (2d Cir. 1999); *Born to Rock Design Inc. v. CafePress.com, Inc.*, No. 10 CIV. 8588 CM, 2012 WL 3954518, at *3 (S.D.N.Y. Sept. 7, 2012); *GMA Accessories, Inc. v. Croscill, Inc.*, No. 06 CIV. 6236 GEL, 2008 WL 591803, at *3 n.2 (S.D.N.Y. Mar. 3, 2008).  However, a plaintiff asserting a claim for registered trade dress infringement need not plead nonfunctionality.  *See Telebrands*, 719 F. Supp. 2d at 299.

Because Plaintiffs have not adequately alleged a likelihood of confusion sufficient to sustain their unregistered trade dress infringement claim, their registered trade dress infringement claim necessarily fails as well.  Plaintiffs fail to state a claim for registered trade dress infringement under Section 32(1) of the Lanham Act.

## III.     The SAC is Dismissed With Prejudice

"[W]here a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."  *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991).  The SAC was Plaintiffs' third opportunity to plead their claims.  [*See* ECF No. 31].

---

32(1) of the Lanham Act for registered trademark infringement, *see infra* Section II, a claim brought under Section 43(a) does require allegations of nonfunctionality.  *See Telebrands Corp. v. Del Lab'ys, Inc.*, 719 F. Supp. 2d 283, 299 (S.D.N.Y. 2010).

The Court's Opinion and Order [ECF No. 27] dismissing Plaintiffs' original Complaint identified deficiencies in Plaintiffs' pleading that they have not rectified here.  Similarly, Defendant's pre-motion letter filed in response to the FAC addressed shortcomings in that pleading.  [*See* ECF No. 29].  Because "the SAC does not cure any of the problems with [Plaintiffs'] pleadings identified by the Court when it dismissed the [Complaint]," the Court dismisses the SAC with prejudice. *Allen v. City of New York*, No. 18-CV-9663 (JGK), 2020 WL 4287361, at *4 (S.D.N.Y. July 27, 2020).

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is GRANTED with prejudice. The Clerk of the Court is respectfully requested to terminate docket entry 34.

**SO ORDERED.**

**Date:   September 26, 2023**
**New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**