USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/24/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE WONDERFUL COMPANY LLC, a Delaware limited liability company; and CAL PURE PRODUCE INC., a California Nonprofit Cooperative Association, Plaintiffs, -against- NUT CRAVINGS INC., a New York Corporation; and DOES 1 through 10, Defendants. | 1:21-cv-03960 (MKV) **OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS COUNTERCLAIMS** |

MARY KAY VYSKOCIL, United States District Judge:

This heavily litigated case is about the packaging of pistachios. Plaintiffs The Wonderful Company LLC ("TWC") and Cal Pure Produce Inc. ("CPP") (together, "Plaintiffs") initiated this action asserting claims under the Lanham Act for trade dress infringement against Defendant Nut Cravings Inc. ("Nut Cravings" or "Defendant"). Nut Cravings has asserted four counterclaims. Count One seeks a declaratory judgment of non-infringement of the alleged trade dress. Count Two seeks a declaratory judgment that the alleged trade dress is invalid. Count Three seeks cancellation of TWC's registered trade dress. Count Four alleges false advertising. Plaintiffs move to dismiss all of the counterclaims asserted by Nut Cravings pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the motion to dismiss is DENIED in part and GRANTED in part.

# BACKGROUND[1]

## A. Facts

TWC alleges that it is the "owner of 'trade dress for its product packaging for pistachio nuts as reflected by its trade dress registration,' namely U.S. Trademark Registration No. 4,554,188" (the "188 Registration"). Counterclaims ¶ 10 (quoting SAC ¶ 1). The 188 Registration covers a trade dress design "consist[ing] of black three-dimensional product packaging having a rectangular shape with transparent semi-circular curved sides, the word 'WONDERFUL' in white with a design of a 'heart' in place of the letter 'O' appearing across the top of the packaging and the word 'PISTACHIOS' in green appearing vertically in the middle of the packaging" for "processed nuts" Counterclaims ¶ 11; [*see also* SAC, Ex. B, ECF No. 33-2].

TWC claims to have an unregistered trade dress that is coextensive with the trade dress covered by the 188 Registration (the "Alleged Trade Dress"). Counterclaims ¶ 12; SAC ¶¶ 12-15. In the Second Amended Complaint, Plaintiffs allege that WONDERFUL brand pistachio nuts are sold in a package bearing the following trade dress elements: (1) "a predominantly black package"; (2) "a bright green accent color"; (3) "use of sans serif font for the word 'PISTACHIOS' "; (4) "use of capital letters for the word 'PISTACHIOS' "; (5) "semi-circular curved 'window' cut outs showing pistachios"; and (6) "the WONDERFUL mark." SAC ¶ 12.

CPP is allegedly TWC's licensee of the Alleged Trade Dress and markets and sells pistachio nuts bearing the Alleged Trade Dress. Counterclaims ¶¶ 13-14; SAC ¶ 2.

Defendant Nut Cravings is a New York-based distributor and retailer of nuts, fruits, and gift packages. Counterclaims ¶ 7. Its products are sold online through its own website and on

---

[1] The background facts are drawn from Plaintiffs' Second Amended Complaint [ECF No. 33 ("SAC")], and Defendant's Amended Answer and Counterclaims [ECF No. 63 at 1-8 (the "Answer" or "Ans."); ECF No. 63 at 9-43 ("Counterclaims")]. For purposes of this motion, the factual allegations of the Counterclaims are accepted as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Judd Burstein, P.C. v. Long*, 797 F. App'x 585, 587 (2d Cir. 2019).

Amazon.com. Counterclaims ¶ 8. Nut Cravings is a competing provider of pistachio products. Counterclaims ¶ 52. For its pistachio products, Nut Cravings' uses a black and green color scheme, has the phrase "roasted salted pistachios" written in all capital letters, a sans-serif typeface, and a rectangular simulated-window on the front of its package. Counterclaims ¶ 15; SAC ¶¶ 13, 34, 36-38.

### B. Procedural History And The Counterclaims At Issue

The Court assumes the parties' familiarity with the procedural history of this case. Relevant here, the Court previously granted Defendant's motion to dismiss the operative Second Amended Complaint in its entirety. [ECF No. 38]. The Second Circuit vacated the dismissal of Plaintiffs' claims, [ECF No. 45], and thereafter, Defendant filed an answer and asserted counterclaims. [ECF No. 53]. Plaintiffs filed a pre-motion letter requesting leave to move to dismiss Defendant's counterclaims. [ECF No. 54]. Defendant opposed, [ECF No. 57], and, with leave of Court [ECF No. 60], filed an Amended Answer and Counterclaims. [ECF No. 63].

In its Counterclaims, Defendant alleges that each of the elements of its packaging, which are similar to the elements that comprise Plaintiffs' Alleged Trade Dress for its packaging, is generic and functional to the packaging of processed nuts. Counterclaims ¶¶ 15, 16. Defendant alleges that its packaging does not create the same overall impression as Plaintiffs' Alleged Trade Dress and thus does not infringe on it. Counterclaims ¶¶ 74-77. Further, Defendant asserts that Plaintiffs' Alleged Trade Dress is invalid and seeks cancellation of the 188 Registration, which embodies the Alleged Trade Dress, on the basis that the protected trade dress is functional and generic. Counterclaims ¶¶ 79-97.

Defendant also alleges in its Counterclaims that Plaintiffs have falsely advertised the weight of its pistachio products by representing that the packages contain more edible pistachios than actually included. Counterclaims ¶¶ 53, 62-68. Defendant points to nineteen consumer

3

reviews on Amazon.com, Walmart.com, and Target.com in which consumers individually complained of a significant number of empty shells in Plaintiffs' pistachio products. Counterclaims ¶¶ 54-61.   Defendant alleges that consumers expect that packages of in-shell processed nuts will include substantially only editable nuts within shells, and that "almost all of the advertised weight" is edible.  Counterclaims ¶¶ 58, 63.  Defendant also contends that inclusion of more than 10% of empty shells would be deceptive.  Counterclaims ¶ 65.  Nut Cravings alleges it is harmed by this purported deception because it leads consumers to purchase Plaintiffs' products instead of its own.  Counterclaims ¶¶ 67, 68.

Plaintiffs now move to dismiss Defendant's Amended Counterclaims under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  [ECF No. 64].  In support Plaintiffs filed a Memorandum of Law ("Mem.").  [ECF No. 65].  Defendant filed an Opposition ("Opp'n"), [ECF No. 66], and Plaintiffs filed a Reply ('Reply").  [ECF No. 68].

## LEGAL STANDARD

The well-settled pleading standard governing a motion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) applies equally to counterclaims.  *Judd Burstein*, 797 F. App'x at 587; *Zurich Am. Life Ins. Co. v. Nagel*, 571 F. Supp. 3d 168, 175 (S.D.N.Y. 2021); *Phoenix Cos., Inc. v. Concentrix Ins. Admin. Sols. Corp.*, 554 F. Supp. 3d 568, 585 (S.D.N.Y. 2021).  Thus, in evaluating a motion to dismiss counterclaims for failure to state a claim, a court must accept all factual allegation as true and construe the counterclaims in the light most favorable to the nonmoving party.  *See Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015); *see also Phoenix Cos.*, 554 F. Supp. 3d at 585.  To survive a motion to dismiss, a counterclaim must contain sufficient allegations, accepted as true, to "state a claim to relief that is plausible on its face." *Judd Burstein*, 797 F. App'x at 587 (citing *Iqbal*, 556 U.S. at 678).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at

4

678.

**DISCUSSION**

### A. Defendant's Counterclaims for Non-Infringement and Invalidity Are Not Duplicative

Defendant's first and second counterclaims seek declaratory judgments pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, of non-infringement and invalidity of the Alleged Trade Dress, respectively. Counterclaims ¶¶ 70-87. Plaintiffs move to dismiss these counterclaims pursuant to Rule 12(b)(6) arguing that Defendant's non-infringement counterclaim is a "mirror image" of Plaintiffs' infringement claim and that both counterclaims are duplicative of Defendant's affirmative defenses.[2] Mem. at 3-4; *compare* Ans. at 7 (asserting affirmative defense of non-infringement and invalidity of Alleged Trade Dress) *with* Counterclaims ¶¶ 70-87 (asserting counterclaims for non-infringement and invalidity). Defendant argues it has adequately plead a declaratory judgment counterclaim for noninfringement and does not address the "duplicative of affirmative defense" argument. Opp'n at 8-9.

As an initial matter, Plaintiffs' argument for dismissal is not an argument for failure to state claim, the only basis for which it has noticed its motion to dismiss Defendant's counterclaims. [ECF No. 64]. Indeed, Plaintiffs have not noticed a motion to strike under Rule 12(f), the typical vehicle by which courts evaluate counterclaims that are alleged to be mirror images of a plaintiff's claims. *See Shunock v. Apple, Inc.*, 738 F. Supp. 3d 371, 384-86 (S.D.N.Y. 2024). Plaintiffs' own authority recognizes as much. Mem. at 3 (citing *BBAM Aircraft Mgmt. LP v. Babcock & Brown LLC*, 725 F. Supp. 3d 206, 222 (D. Conn. 2024) (noting "[d]ismissal under the 'mirror

---

[2] Plaintiffs lodge the same argument in their opening memorandum against Defendant's third counterclaim seeking cancellation of the 188 Registration. Mem. at 3. Plaintiffs do not address this argument in their Reply and focus only on Defendant's first and second counterclaims. Reply at 1. As an initial matter, it is not at all clear what affirmative defense is duplicative of Defendant's counterclaim seeking cancellation of the 188 Registration. In any event, the same analysis governs with respect to any attempt to strike the third counterclaim on this basis.

image' doctrine may be granted pursuant to Federal Rule of Civil Procedure 12(f)")); *but see Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*, 551 F. Supp. 3d 408, 430 (S.D.N.Y. 2021) (dismissing mirror image claims pursuant to Rule 12(b)(6)).

Assuming Rule 12(b)(6) is an appropriate vehicle to seek dismissal, Defendant's counterclaims requesting declaratory judgment of non-infringement and invalidity of Plaintiffs' Alleged Trade Dress should not be dismissed on this basis. A court may dismiss a counterclaim that is a mere "mirror image" of an opponent's claim and serves no independent purpose. *See Larson v. General Motors Corp.*, 134 F.2d 450, 452–54 (2d Cir. 1943); *Shunock*, 738 F. Supp. 3d at 384-86; *Town & Country Linen Corp. v. Ingenious Designs LLC*, No. 18-CV-5075 (LJL), 2020 WL 3472597, at *14 (S.D.N.Y. June 25, 2020). In determining whether to dismiss as duplicative a declaratory judgment counterclaim in similar contexts, courts in this district examine whether the counterclaim is independently viable—*i.e.*, "presents an independent case or controversy that would survive dismissal of the plaintiff's infringement claim." *Orientview Techs. LLC v. Seven For All Mankind, LLC*, No. 13 CIV. 0538 PAE, 2013 WL 4016302, at *4 (S.D.N.Y. Aug. 7, 2013); *see also e.g.*, *Leach v. Ross Heater & Manufacturing Co.*, 104 F.2d 88 (2d Cir. 1939); *Shunock*, 738 F. Supp. 3d at 386; *Town & Country*, 2020 WL 3472597, at *14.

On this point, the Second Circuit decision in *Leach v. Ross Heater & Manufacturing Co.*, 104 F.2d 88 (2d Cir. 1939), is instructive. There, the plaintiff sued for patent infringement and the defendant asserted counterclaims for invalidity and noninfringement of the patent. *Leach*, 104 F.2d at 89. The Second Circuit reversed dismissal of the counterclaims for invalidity and non-infringement where the plaintiff voluntarily dismissed its infringement claim before a ruling on the merits. *Id.* at 89-90. The Court explained that "[t]he need for declaratory judgment is diminished, it is true, by the fact that the patentee has commenced his suit, but the need cannot be said to have wholly disappeared; the patentee may, for all that the defendant knows, withdraw his

suit without prejudice and continue broadcasting assertions of infringement." *Id.* at 91. Thus, without a ruling on the merits of plaintiff's claims, defendant's counterclaims presented a live case or controversy because the defendant remained vulnerable to the threat of future litigation regarding the same patent. *See id.*

In contrast, the Second Circuit in *Larson* held that counterclaims for invalidity of the patent at issue were not sustainable after the plaintiffs consented to judgment on the merits that defendant had not infringed the patent. *Larson*, 134 F.2d at 452-53. The Second Circuit held that "the validity of the patent ceased to have any substantial importance to the parties as soon as the plaintiffs consented to judgment on the merits" of the infringement claim. *Id.* at 453. Indeed, the Second Circuit in *Larson* distinguished its earlier decision in *Leach*, explaining that the dismissal in *Leach* "was not upon the merits and did not bar a second action." *Id.*

In its current posture, this case is akin to *Leach* and dismissal of these counterclaims at this stage is not warranted because there has not been an adjudication on the merits of Plaintiffs' infringement claims. "As in *Leach*, [Defendant] seeks declaratory judgment of noninfringement as well as invalidity, claims that would continue to exist absent a dismissal on the merits of Plaintiff[s'] infringement claims." *Shunock*, 738 F. Supp. 3d at 385 (declining to dismiss mirror image counterclaim of noninfringement, reasoning that there remained a case or controversy absent a ruling on the merits of plaintiff's infringement claims because defendant "would remain vulnerable to liability on the same claims"); *see also Town & Country*, 2020 WL 3472597, at \*14 (declining to dismiss noninfringement counterclaim because "if Plaintiffs were to withdraw their claims prior to a ruling on the merits, Defendants would remain vulnerable to liability on the same claim"); *Orientview Techs.*, 2013 WL 4016302, at \*4-5 (same).

Thus, it is premature to dismiss Defendant's noninfringement and invalidity counterclaims at this stage in the absence of a ruling on the merits of Plaintiffs' infringement claims. *See Leach*,

7

104 F.2d at 91; *see also Certicable Inc. v. Point 2 Point Commc'ns Corp.*, No. 2:23-CV-5322 (NJC) (SIL), 2025 WL 622547, at *7-8 (E.D.N.Y. Feb. 26, 2025) (granting motion for reconsideration and reinstating counterclaims for declaratory judgment of invalidity of plaintiff's patents as duplicative since each assert an independent case or controversy that remains viable after dismissal of plaintiff's infringement claims).

For the same reason, it is of no moment that Defendant's second counterclaim for invalidity is duplicative of its affirmative defense. *See Town & Country* 2020 WL 3472597 at *14 (rejecting argument that counterclaims for non-infringement should be dismissed despite being duplicative of affirmative defense given they presented a live case or controversy absent a ruling on the merits). Indeed, if Plaintiffs were to withdraw their claims without a ruling on the merits, the Court could not adjudicate Defendant's affirmative defenses. In such a case, Defendant could remain vulnerable to liability on the same claims and "a case or controversy would still exist in connection with the counterclaim." *Shunock*, 738 F. Supp. 3d at 386 (quoting *Orientview Techs.*, 2013 WL 4016302, at *5).

Accordingly, Plaintiffs' motion to dismiss Counterclaims One and Two are denied. To the extent Plaintiffs seek dismissal of the third counterclaim as duplicative of an affirmative defense, that motion similarly is denied.

## B. Defendant Plausibly Alleges A Claim for Invalidity of the Alleged Trade Dress

Plaintiffs also argue that Defendant's second counterclaim seeking a declaratory judgment that the Alleged Trade Dress is invalid should be dismissed on the separate ground that it fails to state a claim. Specifically, Plaintiffs contend that Defendant has failed to plausibly allege the Alleged Trade Dress is functional. Mem. at 4-7.

A trade dress for product packaging is invalid if the packaging is functional. *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29 (2001) ("[T]rade dress protection may not

8

be claimed for product features that are functional."); *Paddington Corp. v. Attiki Importers & Distributors, Inc.*, 996 F.2d 577, 582 (2d Cir. 1993) ("[F]unctional packaging and product design are unprotected[.]").  "The functionality doctrine prevents trademark law, which seeks to promote competition by protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful product feature." *Qualitex Co. v. Jacobson Prod. Co.*, 514 U.S. 159, 164 (1995).

A product feature is functional if it: (1) "is essential to the use or purpose of the" product or (2) "affects the cost or quality of the" product.  *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 116 (2d Cir. 2001) (quoting *TrafFix*, 532 U.S. at 32–33).  A feature is considered aesthetically functional "if giving the markholder the right to use it exclusively 'would put competitors at a significant non-reputation-related disadvantage.'"  *Christian Louboutin S.A. v. Yves Saint Laurent America Holdings, Inc.*, 696 F.3d 206, 219-20 (2d Cir. 2012) (quoting *Qualitex*, 514 U.S. at 165).

The functionality inquiry does not assess individual elements of a trade dress in isolation. Rather, the inquiry assesses the trade dress as a whole—*i.e.*, "the combination of elements and the total impression that the dress gives to the observer." *Wonderful Co. LLC v. Nut Cravings Inc.*, No. 23-7540, 2025 WL 212064, at *4 (S.D.N.Y. Jan. 16, 2025) (summary order) (quoting *Paddington*, 996 F.2d at 584); *Coach, Inc. v. We Care Trading Co., Inc.*, 67 F. App'x 626, 629 (2d Cir. 2002) ("Even if individual elements of a trade dress are functional, their arrangement or combination may be 'arbitrary, fanciful, or suggestive' and thus deserve trade dress protection.") (quoting *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 32 (2d Cir.1995)).  Yet, "the fact that a trade dress is composed exclusively of commonly used or functional elements might suggest that that dress should be regarded as unprotectable or 'generic,' to avoid tying up a product or marketing idea." *Milstein*, 58 F.3d at 32; *see also Laurel Road Bank v. CommonBond, Inc.*, 18-cv-7797 (ER), 2019 WL 1034188, at *6 (S.D.N.Y. Mar. 5, 20219) (noting that "where

9

each element is functional and the elements work in tandem to create an advertisement that is readable and eye-catching, [plaintiff] is not likely to meet its burden that the Trade Dress is nonfunctional").

As an initial matter, Plaintiffs argue that this counterclaim "focuses on the two color elements of Plaintiffs' trade dress"—*i.e.*, the use of the colors black and green. Mem. at 4. But this misconstrues the basis of the second Counterclaim as Defendant clearly alleges that each element of the Alleged Trade Dress, except the WONDERFUL mark itself, is functional. Counterclaims ¶¶ 15-16 (alleging each element of the trade dress "is generic and functional"), ¶ 81 ("the only non-functional element of the Alleged Trade Dress is its inclusion of 'the WONDERFUL mark.'").

Turning to Plaintiffs' first substantive argument, Plaintiffs argue that since its trade dress is registered it is "*presumed* to be non-functional" and that the use of the colors green and black "in both the registered and unregistered trade dress *cannot be functional as a matter of law* since they are part of a registered trademark." Mem. at 4 (italics in original). Plaintiffs are correct that a registered trade dress "implicitly includes a presumption of nonfunctionality." *Wonderful Co. LLC v. Nut Cravings Inc.*, No. 23-7540, 2025 WL 212064, at *4 (2d Cir. Jan. 16, 2025). However, that presumption, whether it applies to Plaintiffs' unregistered trade dress or not, does not preclude a plausible counterclaim that the Alleged Trade Dress is indeed functional. Indeed, a presumption does not legally establish a fact, and absent a rule or law to the contrary, can be rebutted. *See Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 811 (2011) (noting a presumption is "just that, and could be rebutted by appropriate evidence"); *see also Christian Louboutin S.A.*, 696 F.3d at 216 n.10 (noting the presumption of validity for registered marks merely shifts the burden to the alleged infringer to show the registered mark is invalid). In short, a *presumption* of functionality plainly does not insulate a trade dress from any functionality-based challenges. *See Lane Capital*

10

*Mgmt. v. Lane Capital Mgmt.*, 192 F.3d 337, 345 (2d Cir. 1999). Indeed, taken to the extreme, Plaintiffs' presumption-based argument would bar any court from invalidating a registered mark on the basis that it is improperly functional, which would run afoul of the statutory scheme. *See* 15 U.S.C. § 1115(b)(8) (providing a defense of functionality for registered marks); 15 U.S.C. § 1119 (providing that a court may cancel registered marks).

Here, despite the presumption of non-functionality, Defendant has plausibly alleged that Plaintiffs' Alleged Trade Dress is in fact functional and explained how each element of the Alleged Trade Dress, except for the WONDERFUL mark itself, is functional and conveys a non-reputation related benefit for packaging of processed nuts. Specifically, in support of its assertion that the use of a green and black color scheme is functional, Defendant alleges that these colors independently provide a non-reputation related benefit of an aesthetically pleasing appearance, with black separately indicating high quality and green separately indicating the product is related to "nature, health and/or pistachios." Counterclaims ¶¶ 17-26. And in support, Defendant cites in its pleading numerous reports and publications explaining the benefits of the use of these colors for food packaging. Counterclaims ¶¶ 19-24. This plausibly is suggestive of functionality. Moreover, Defendant alleges that numerous other processed nut products use green and black for their packaging and provides 36 specific examples. Counterclaims ¶¶ 27-28.

That a color on packaging may be functional in a given industry is not without precedent. *See Beech-Nut, Inc. v. Warner-Lambert Co.*, 346 F. Supp. 547, 548-550 (S.D.N.Y. 1972), *aff'd*, 580 F.2d 801 (2d Cir. 1973) (noting the functionality of the use of green and blue for gum packaging and explaining "[g]reens for wintergreen and spearmint are considerably used for gums (of both parties before us, among others) as well as mints. Likewise for peppermint and blue.");[3]

---

[3] Plaintiffs incorrectly argue that the *Beech-Nut* case concerned the color of the product itself—not the packaging. The case did in fact concern similar gum *packaging*. 346 F. Supp. at 548-49 ("This struggle between corporate

*see also In Re Florists Transworld Delivery, Inc.*, No. 77590475, 2013 WL 2951796, at \*1, 8-9 (T.T.A.B. Mar. 28, 2013) (affirming denial of registration of black box for floral arrangement on the basis that the color black is functional and communicates luxury, thus "there is a competitive need for others in the industry to use the color black in connection with floral arrangements and flowers"); *cf. Mana Prods., Inc. v. Columbia Cosms. Mfg., Inc.*, 65 F.3d 1063, 1071 (2d Cir. 1995) ("[A]lthough color may be a protected trademark, it is not always so protected.").

Defendant similarly alleges that the other elements—capital letters, sans-serif font, and transparent windows on the package—are functional and provide non-reputation related benefits for food packaging. Counterclaims ¶¶ 29-40. Specifically, Defendant alleges that the use of all capital letters are commonly used to denote simplicity and/or premium quality and thus give a non-reputation related benefit of an aesthetically pleasing appearance and that the product is "high-quality." Counterclaims ¶¶ 29-32. Defendant alleges that sans-serif font is commonly used to assist readability and provides a non-reputation related benefit of the same. Counterclaims ¶¶ 33-36. Defendant alleges that transparent windows are commonly used to "entic[e] customers, enhance[e] product visibility, and/or display[] the freshness of items inside" and thus provide a non-reputation related benefit of increasing a consumer's desire to purchase. Counterclaims ¶¶ 37-39. In sum, Defendant alleges these elements are "generic product design" and thus not protected. Counterclaims ¶ 40.

Courts have found similar elements to be functional in similar contexts. *See Laurel Road Bank*, 2019 WL 1034188, at \*7 (finding the use of sans serif font in advertising campaign to be functional as it "enhanced legibility and readability" and that the use of "large text catches a

---

titans . . . , is concerned with cylindrical packages of confections" and elsewhere noting "[t]he packaging of defendant's product uses the same colors, though different tones, for the same flavors: greens for wintergreen and spearmint, blue for peppermint").

viewer's attention" and is also functional); *Kind LLC v. Clif Bar & Co.*, No. 14-cv-770 (KMW) (RLE), 2014 WL 2619817, at *3 (S.D.N.Y. June 12, 2014) (holding that the use of a transparent window on food packaging for food bars serves a functional purpose "of revealing the bar within" and noting the use of this element in plaintiff's asserted trade dress "militate against" finding it protectable). Indeed, in reversing the dismissal of Plaintiffs' claims in this case and finding Plaintiffs plausibly alleged the Alleged Trade Dress is nonfunctional, the Second Circuit noted that "the transparent windows in the packaging [] arguably serve the *functional* purpose of allowing a consumer to view the pistachios being sold." *Wonderful Co.*, 2025 WL 212064, at *4 (emphasis added).

Plaintiffs argue that the allegations in support of Defendant's counterclaims are insufficient because they inappropriately dissect each element and fail to allege that the combination as a whole is functional. Mem. at 4-6; Reply at 3 (stating an "element by element analysis is incorrect"). Yet, Defendant's allegations of functionality do not run afoul of the need to assess the trade dress as a whole because the allegations provide "the foundation for the conclusion that the combination of elements is a functional whole." *Diageo N. America, Inc. v. W.J. Deutsch & Sons, Ltd.*, 283 F. Supp. 3d 182, 186-87 (S.D.N.Y. 2018) (denying motion to dismiss counterclaim of functionality of plaintiff's whiskey bottle on the basis that defendant alleged each element was functional and thus plausibly suggested the combination was functional as well); *see also Laurel Road Bank*, 2019 WL 1034188, at *7 (acknowledging that the relevant inquiry turns on the combination of elements but holding "where each element is functional and the elements work in tandem to create an advertisement that is readable and eye-catching, Laurel Road is not likely to meet its burden that the Trade Dress is nonfunctional."); *Milstein*, 58 F.3d at 32 ("[T]he fact that a trade dress is composed exclusively of commonly used or functional elements might suggest that that dress should be regarded as unprotectable or 'generic,' to avoid tying up a product or marketing idea.").

To be sure, Plaintiffs are no doubt correct in arguing that even where "individual elements of a trade dress are functional, their arrangement or combination *may* be arbitrary, fanciful, or suggesting and thus deserve trade dress protection." *Coach Inc.*, 67 F. App'x at 629 (emphasis added). Yet, at this stage, Defendant has plausibly alleged the arrangement is functional as a whole and has provided Plaintiffs with a non-reputation related benefit that disadvantages Defendant. *See Diageo*, 293 F. Supp. 3d at 187; *Milstein*, 58 F.3d at 32.

The Second Circuit opinion does *not* preclude this determination. The Second Circuit simply held that Plaintiffs had plausibly alleged a claim for infringement of its registered trade dress under Section 32 of the Lanham Act, 15 U.S.C. § 1114, and for infringement of its unregistered trade dress under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). *Wonderful Co.*, 2025 WL 212064, at *1. It did not rule on the merits of those claims as a matter of law. *Id.* at *4-5. Defendant is therefore free to allege a counterclaim seeking a contrary merits ruling and has plausibly done so here.

Accordingly, Plaintiffs' motion to dismiss the second Counterclaim on this basis is denied.

### C. Defendant Plausibly Alleges A Claim for Cancellation of the 188 Registration

Plaintiffs argue that Defendant's third counterclaim seeking cancellation of the 188 Registration on the grounds that the registered trade dress is generic should be dismissed for failure to state a claim. Specifically, Plaintiffs contend that Defendant's allegations do not support a finding that the trade dress embodied in the 188 Registration is generic. Mem. at 7-12.

While not explicitly saying so, the parties' arguments concern the requirement that a trademark be distinct. *See Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 999-1000 (2d Cir. 1997). The distinctiveness of a trade dress is evaluated on a spectrum and is classified as "generic, descriptive, suggestive, or arbitrary/fanciful." *Id.* at 1000. "Suggestive and arbitrary or fanciful trade dress are deemed inherently distinctive," whereas a descriptive trade

14

dress may be distinctive should the markholder establish "that its mark has acquired secondary meaning giving it distinctiveness to the consumer." *Id.* Generic trade dress on the other hand is not distinct and receives no Lanham Act protection. *Id.*

As applied to product packaging, "since the choices that a producer has for packaging its products are . . . almost unlimited, typically a trade dress will be arbitrary or fanciful and thus inherently distinctive." *Paddington Corp.*, 996 F.2d at 583. However, "where it is the custom of an industry to package products in a particular manner, a trade dress in that style would be generic." *Paddington*, 996 F.2d at 583-84 (noting as an example that "packaging lime-flavored soda in green twelve-ounce cans is so common in the soft drink industry that such packaging probably is not inherently distinctive"); *see also Kind LLC*, 2014 WL 2619817, at *3 ("An otherwise protectable trade dress can become generic within a particular market if the design becomes a standard or custom for the industry.") (quoting *Regal Jewelery Co., Inc v. Kingsbridge, Int'l, Inc.*, 999 F. Supp. 477, 489 (S.D.N.Y. 1998)).

Moreover, as is the case in assessing functionality, "[a]lthough each element of a trade dress individually might not be inherently distinctive, it is the combination of elements that should be the focus of the distinctiveness inquiry." *Milstein*, 58 F.3d at 33. And similarly, "the fact that a trade dress is composed exclusively of commonly used or functional elements might suggest that that dress should be regarded as unprotectable or 'generic,' to avoid tying up a product or marketing idea." *Id.*

Here, while the allegations are admittedly thin, for much the same reason that Defendant sufficiently plead that the combination of elements of the alleged Trade Dress is functional, so too has Defendant sufficiently plead that the trade dress design embodied in the 188 Registration, which is allegedly co-extensive with the unregistered trade dress, is generic. Indeed, Defendant has alleged that the use of sans-serif and capital letters are "commonly used for the brand and/or

product name in marketing." Counterclaims ¶¶ 29-34. And Defendant alleges that the use of transparent windows is "commonly used for food packaging." Counterclaims ¶ 37. Further, with respect to the use of colors black and green, Defendant plausibly alleges, and the Court must accept as true, that these are standard colors for packaging in the processed nut industry and provides numerous examples of the use within the industry of such colors in the packaging of nut products. Counterclaims ¶¶ 17-28. And while the allegations largely target each element individually, Defendant has met its burden at this stage to plausibly allege that these commonly used and functional elements are nonetheless generic even in combination. *See Milstein*, 58 F.3d at 33 ("the fact that a trade dress is composed exclusively of commonly used or functional elements might suggest that that dress should be regarded as unprotectable or 'generic'"); *see also Laurel Road Bank*, 2019 WL 1034188, at *5 ("Because the Trade Dress is composed exclusively of commonly used elements, which have all been used in combination previously, the Trade Dress is likely generic"); *Kind LLC*, 2014 WL 2619817, at *3 (holding that a party's common packaging design for food bars was not inherently distinctive where other food bars used "one or more of the six element that [the party] seeks to protect [] as its trade dress").

While the Court notes that Defendant's allegations concerning industry custom are thin and discovery will ultimately bear out the veracity of any suggestion of an industry custom of the combination of these elements, Defendant's Counterclaims, viewed in the most favorable light, have sufficiently alleged that the trade dress embodied in the 188 Registration is generic.

Accordingly, Plaintiffs' motion to dismiss the third Counterclaim is denied.

### D. Defendant Fails to Plausibly Allege A False Advertising Claim

Defendant separately brings a claim for false advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), contending that Plaintiffs' packaging lists an untrue net weight. Defendant alleges that Plaintiffs' packaging implies that the content of the package comprise substantially

only edible pistachios when in reality consumers receive a significantly smaller quantity of edible pistachios since the packages contain significant numbers of empty shells. Counterclaims ¶¶ 53-69, 98-105. Plaintiffs argue this claim must be dismissed because Defendant has failed to adequately plead a false statement, an implied false statement, materiality of the false statement, and injury. Mem. at 12-17.

The Lanham Act proscribes "us[ing] in commerce . . . any word, term, name, symbol, or device . . . or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a). To state a claim for false advertising under the Lanham Act, a claimant must allege "that the challenged message is (1) either literally or impliedly false, (2) material, (3) placed in interstate commerce, and (4) the cause of actual or likely injury to the plaintiff." *Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH*, 843 F.3d 48, 65 (2d Cir. 2016); *see also Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 56 (2d Cir. 2022).

Plaintiffs argue that Defendant has not established that it suffered any injury as a result of the allegedly false advertising. Mem. at 17. Defendant counters that it has alleged injury by virtue of its allegations that it competes with Plaintiffs in the pistachio market and that more consumers would have purchased its product but for the alleged deception. Counterclaims ¶¶ 52, 67-68. Defendant's allegations, however, fail to plausibly allege an injury. Thus, Defendant's false advertising claim is dismissed with prejudice.

The Supreme Court has held that the classic Lanham Act false advertising claim is one in which "one competitor directly injures another by making false statements about his own goods or the competitor's good and thus inducing customers to switch." *Lexmark Int'l, Inc. v. Static*

*Control Components, Inc.*, 572 U.S. 118, 133 (2014) (cleaned up); *see also Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 255 (2d Cir. 2014) (characterizing "direct diversion of sales" as injury under Lanham Act).  However, a party must plausibly allege that any economic injury "flow[s] directly from the deception wrought by the [false] advertising," and that occurs when "deception of consumers causes them to withhold trade from the" complaining party.  *Lexmark*, 572 U.S. at 133.  Indeed, the Second Circuit has held that "some indication of actual injury and causation" is needed for a Lanham Act claim to survive a motion to dismiss and ensure any injury is not purely speculative.  *McNeilab, Inc. v. American Home Prods. Corp.*, 848 F.2d 34, 38 (2d Cir. 1988).  Moreover, conclusory allegations that false advertisements caused one to lose sales are insufficient.  *Davis v. Avvo, Inc.*, 345 F. Supp. 3d 534, 544 (S.D.N.Y. 2018); *cf. 3B Med., Inc. v. SoClean, Inc.*, No. 20-3477-CV, 2021 WL 2025153 (2d Cir. May 21, 2021) (reversing dismissal of false advertising claim where plaintiff alleged that after customers discovered the false advertising, they decided to purchase plaintiff's product, thereby implying that the false advertising did lead customers to withhold trade from plaintiff).

Here, Defendant offers only conclusory allegations that the supposedly false description of net weight on Plaintiffs' packages detrimentally impacted Defendant's sales in that that more consumers would have purchased its product but for the alleged deception.  Counterclaims ¶¶ 67-68.  This bald assertion is unsupported by any alleged facts.  *See Millennium Access Control Tech., Inc. v. On the Gate, LLC*, No. 15-CV-6067(SJF)(AKT), 2017 WL 10445800, at *12 (E.D.N.Y. Feb. 14, 2017) (finding conclusory allegations that a party's misrepresentations would lead to "loss of sales and profits which would be derived but for Defendant's acts" to be insufficient without supporting facts). While Defendant does cite 19 customer reviews of individuals who complained about "a significant number of empty shells" in pistachio products purchased from Plaintiffs, Counterclaims ¶¶ 54-61, none of the cited customer reviews mentions Defendant or says that the

customer otherwise would have purchased from Defendant absent the allegedly false statements. *Cf. 3B Med.*, 857 F. App'x at 29 (holding allegation of diversion of sales based on customer reviews plausible where the reviews indicated customers purchased plaintiff's product after discovering the false advertisement).

Further underscoring the Court's conclusion is the fact that nowhere does Defendant allege that every pistachio product Plaintiffs sell reflects a purportedly false representation as to its net weight due to a significant number of empty shells. In this context, Defendant's allegations are clearly insufficient. To hold otherwise would enable every seller of pistachios to claim injury and assert false advertising claims against a pistachio seller so long as a single consumer (or in this case nineteen) complained that the pistachio product it bought from the allegedly deceptive seller indicated the net weight of the package yet contained too many shells without pistachios. This position would clearly run afoul of a party's obligation to plausibly allege that it suffered an "actual injury," *McNeilab*, 848 F.2d at 38, that "flow[s] directly from the deception wrought by the [false] advertising." *Lexmark*, 572 U.S. at 133.[4]

In short, Defendant has failed to adequately allege injury and, accordingly, the Court grants Plaintiffs' motion to dismiss the fourth Counterclaim with prejudice.[5]

Because the Court determines that Defendant has failed to plausibly allege injury it need

---

[4] Moreover, Defendant's inability to plausibly allege causation between the allegedly false net weight representation and any economic injury to Defendant is plagued by the fact that Defendant never precisely alleges just how many shells without nuts is too much. At times Defendant alleges consumers expect pistachio packages to include "substantially only edible nuts," Counterclaims ¶ 63, at other points it alleges consumers expect "almost all" the package to include edible nuts in shells, Counterclaims ¶ 58, and elsewhere it alleges consumers expect no more than 10% of shells to be empty. Counterclaims ¶ 64-65. This further complicates the ability to plausibly allege that the purportedly false statement here "divert[ed] sales from" Defendant, who makes no representation as to the number of pistachios without shells that are in its own packages. *See Lexmark Int'l*, 572 U.S. at 123.

[5] Defendant requests leave to amend should the Court conclude that any Counterclaims are insufficiently pled. Opp'n at 24. However, the Court has previously granted Defendant leave to amend his Counterclaims, [ECF No. 60], in response to the arguments raised in Plaintiffs' pre-motion letter in connection with its anticipated motion to dismiss. [ECF No. 54]. Defendant ultimately filed amended Counterclaims. [ECF No. 63]. In granting leave to amend, the Court made clear that "[t]his will be Defendant's final opportunity to amend the counterclaims to cure any deficiency identified in Plaintiff's pre-motion letter." [ECF No. 60]. Thus, the Court denies Defendant's

not consider whether it has adequately pled the remaining elements that Plaintiffs challenge.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Dismiss Defendant's Counterclaims is DENIED IN PART and GRANTED IN PART.  Counts One, Two, and Three of Defendant's counterclaims survive and Count Four is dismissed. The Clerk of the Court is respectfully requested to terminate docket entry 64.

**SO ORDERED.**

**Date:  March 24, 2026**
**New York, NY**

MARY KAY VYSKOCIL
United States District Judge

---

request to further amend its counterclaims and dismissal with prejudice is appropriate. *See City of Pontiac Policemen's and Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 177 (2d Cir. 2014) (affirming dismissal with prejudice and denying leave to amend where party had a prior opportunity to amend).